# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 07-10104-MLB |
| | ) | |
| JERMALL L. CAMPBELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court for consideration of the following motions:

1.   Defendant's motion to suppress evidence seized pursuant to a search warrant (Doc. 20), and the government's response thereto (Docs. 25, 26); and

2.   Defendant's motion to dismiss the indictment (Doc. 23), and the government's response thereto (Doc. 24).[1]

Defendant stands charged with one count of felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).[2]  (Doc. 1.)  A

---

[1]   Several additional motions are pending in this case: 1) the government's notice of intent to introduce evidence of defendant's prior conviction, pursuant to Rule 404(b) (Doc. 13), and defendant's objections thereto (Doc. 17); 2) the government's motion in limine to determine the admissibility of evidence establishing that defendant is a member of the Crip street gang (Doc. 16); and 3) Defendant's motion in limine to exclude: (a) physical evidence, expert opinions, and statements not yet produced; (b) out-of-court testimonial witness statements; and (c) reference to defendant's association with gangs (Doc. 19).  These motions will be the subject of a separate order from this court.

[2]   On June 26, 2007, defendant filed an offer of stipulation of his prior felony conviction, pursuant to Old Chief v. United States, 519 U.S. 172 (1997).  (Doc. 18.)

hearing was held on the pending motion to suppress and motion to dismiss on July 16, 2007.  The motions are DENIED for the reasons stated herein.

## I.  FACTS[3]

Government authorities raided defendant's residence at 2331 N. Green, Wichita, Kansas, on May 1, 2007, at approximately 7:40a.m. Defendant's residence was searched pursuant to a warrant issued by United States Magistrate Judge Donald Bostwick on April 27, 2007.  The affidavit supporting the search warrant, sworn to by Ron Goodwyn (hereinafter the "Goodwyn Affidavit"), detailed a dragnet expedition against thirty-three alleged gang members and targeted fifteen different residences to be searched.

The Goodwyn Affidavit stated that it sought evidence related to street gang activities involving nine different Wichita street gangs engaged in "an ongoing and continued pattern of violations" of seventeen federal statutes.[4]  Specifically, the Goodwyn Affidavit sought the following evidence related to gang activities: firearms, firearm accessories, and ammunition; telephones, address books,

---

[3] This section is summarized from defendant's factual recitation in support of his motion to suppress.  (See Doc. 20 at 1-10.) Additional facts are taken from the affidavit supporting the search warrant in question.

[4] The criminal statutes alleged were: 21 U.S.C. § 846 (narcotics conspiracy), 21 U.S.C. § 848 (continuing criminal enterprise), 21 U.S.C. § 856 (maintaining drug-involved premises), 21 U.S.C. § 853 (drug forfeiture), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 521 (criminal street gangs), 18 U.S.C. § 922 (felon in possession of a firearm), 18 U.S.C. § 924(c) (carrying a firearm in relation to drug trafficking or crimes of violence), 18 U.S.C. §§ 1956, 1957 (money laundering and money laundering conspiracy), 18 U.S.C. § 1959 (violent crimes in aid of racketeering), 18 U.S.C. §§ 1961, 1962 (RICO and RICO conspiracy), 18 U.S.C. § 1963 (forfeiture), and 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461 (criminal forfeiture).

telephone records, communication devices, data and lists reflecting names, and addresses and telephone numbers of suspected co-conspirators; photographs, videotapes, correspondence, and other documents establishing relationships between members and/or associates of the Crips; indicia of occupancy, residency, rental, control and ownership of the targeted premises; documentation relating to living and recreational expenses; and gang paraphernalia. The Goodwyn Affidavit also alleged that the Crip street gang was involved in the sale of narcotics and that records of these sales are often kept in the individual gang member's home.

Specifically regarding defendant, the Goodwyn Affidavit stated the following:

- Defendant lives at 2331 N. Green.

- Defendant is associated with the Neighborhood Crips street gang.

- On July 30, 1997, while executing a search warrant on 1320 N. Indiana, which was the residence of Curtis Profit, an alleged Neighborhood Crips gang member, defendant was inside the residence at the time.

- On October 4, 2000, defendant was stopped in a vehicle at 19th and Green Streets and a plastic baggie containing a small amount of cocaine was located in the vehicle. Defendant was convicted of possession of paraphernalia in municipal court.

- On October 24, 2000, officers responded to a call of shots fired at 1247 N. Platt, the residence of James Jones. Officers found shell casings in the street and discovered that the Jones' residence had been shot at. Defendant was inside the residence. The victims were allegedly uncooperative with officers.

- On November 24, 2000, Tanisha Webb reported that several black males entered her house at 2504 E. 8th Street and began shooting. Three victims were hit by gunfire, two of whom were allegedly members of the Folk street gang. Marteaus Carter and James Jones were arrested and convicted of aggravated battery for the shooting, which was allegedly

in retaliation for the shooting of Lucas Wade on November 23, 2000. While officers were searching for Marteaus Carter after the shooting, they stopped a vehicle associated with him, which was driven by defendant.

- On March 2, 2001,[5] defendant was stopped in a vehicle at 17th and Minnesota Streets and arrested for a traffic warrant. Officers located a baggie of crack cocaine under the passenger seat where Derrick Waite, allegedly associated with the Neighborhood Crips, was seated.

- On October 10, 2001, defendant was gambling at 1906 E. 24th Street when he, Carlos Adair, allegedly a Neighborhood Crip, and Tyrone Adair were robbed at gunpoint of six hundred dollars. This residence was rented by Tommy Williamson, also allegedly a Neighborhood Crip, at the time. Williamson lived at another address, 1716 N. Bluff. At around 1900 to 1930 hours, someone shot at the house at 1906 E. 24th Street. At 2025 hours, the house was set on fire. At 2040 hours, someone shot at Tommie Williamson's other house at 1716 N. Bluff. At 2340 hours, Terry Carter a.k.a. Terry Gasper, a Blood, was shot while visiting his girlfriend at 1642 N. Estelle. A 9mm shell casing was recovered which matched the 9mm used at 1716 N. Bluff. At 2358 hours, Andre Walker, a Blood, was approached by defendant, Gregory Epps, Carlos Adair and Tyrone Adair. As Walker drove away, his vehicle was shot at several times and he was struck in the back. On October 11, 2001, defendant was arrested at 1332 N. Spruce and a 12 gauge shotgun was found in the residence. He was charged with aggravated battery for the shooting of Andre Walker, arson for the fire at 1906 E. 24th Street, and possession of a firearm by a felon for the shotgun. He pled guilty to arson and criminal possession of a firearm.

- On June 19, 2003, officers stopped a vehicle driven by defendant at 9th and Green Streets. Lonnie Wade, an alleged Neighborhood Crip, was in the vehicle.

- On July 2, 2006, David Barney was shot and killed while walking in the area of 100 N. Spruce. Confidential Witness #3 ("CW #3") stated that defendant shot and killed David Barney and that CW #3 was present when it occurred.

CW #3 is an unnamed cooperating witness who has been supplying

information since November 2006. CW #3 is a documented member of the

_____

[5] The Goodwyn Affidavit states that this incident occurred in 1991, but this is an obvious typographical error when viewed in the time line the affidavit sets forth.

Neighborhood Crips street gang and has participated in some of the gang's criminal activities, including: theft, prostitution and sex trafficking, drug trafficking, money laundering, physical assaults, weapons violations, robberies, attempted murder, and murder.  The Goodwyn Affidavit states that much of the information provided by CW #3 has been verified through independent investigation, such as police reports, recorded conversations, letters, interviews, telephone records, surveillance, undercover narcotics purchases, and evidence recovered in the execution of search warrants.  CW #3 is in custody awaiting trial on a pending federal charge of possession of a firearm by a felon.  By cooperating with the government, CW #3 indicated a desire to receive a reduced sentence for his own case.

When authorities executed the search warrant on defendant's residence, they seized a single .25 auto cartridge, two .22 caliber cartridges, and a plastic bag containing multiple cartridge rounds. Authorities also searched defendant's vehicle which was parked in the garage at defendant's residence.  The vehicle was searched after the raid commenced and pursuant to a separate search warrant issue by Magistrate Judge Bostwick on May 1, 2007 based on authorities seeing a bullet hole on the vehicle and a shell casing in the vehicle in plain view.  The warrant application and affidavit for search of the vehicle were sworn to and prepared by John Barrier (hereinafter the "Barrier Affidavit"), a detective with the Wichita police department. During the search of the vehicle, authorities took twenty-two swabs for DNA analysis and prints.

As a result of the discovery of the ammunition, defendant was arrested at his residence and, on May 3, 2007 was indicted with being

-5-

a felon in possession of ammunition.

## II.  ANALYSIS

### A.  Motion to Suppress Evidence

Defendant moves for suppression of evidence and statements seized as a result of the May 1, 2007 search of his home and vehicle, pursuant to a search warrant.  (Doc. 22 at 1.)  Defendant argues that probable cause did not exist for the search warrant because it: 1) lacked particularity; 2) was based on stale information; and 3) was based on unreliable statements by a confidential witness.  (Doc. 22 at 10-14.)  Defendant also alleges that the challenged evidence is not admissible under the "good faith" exception to the exclusionary rule.[6] (Doc. 22 at 14-16.)

### 1.  Probable Cause

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

---

[6]   Defendant initially alleged that the return on the search warrant was defective and moved to suppress the introduction into evidence of a blue shirt and belt because the property was not recorded on the sealed return of the warrant, in violation of Federal Rule of Criminal Procedure 41(f).  (Doc. 22 at 16-17.)  Rule 41(f) requires that the officer executing a search warrant must return it after execution with a copy of the inventory seized to the magistrate judge.  See FED. R. CRIM. P. 41(f).
The government responded that the blue shirt and belt were not seized pursuant to the search warrant, but were worn by defendant at the time of his arrest and were seized as part of the routine jail booking process.  (Doc. 26 at 9.)  Defendant conceded at oral argument that the blue shirt and belt were worn by defendant at the time of his arrest.  As a result, this portion of defendant's motion to suppress is denied as moot.

searched, and the persons or things to be seized.
U.S. Const. amend. IV.  The validity of a warrant is not determined by "nit-picking" discreet portions of the application.  Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed.  Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." Harris, 369 F.3d at 1165 (quoting United States v. Hernandez-Rodriquez, 352 F.3d 1325, 1330 (10th Cir. 2003)).  The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." United States v. Rowland, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990)).

In the case of multi-location search warrants, the magistrate judge must be careful to evaluate each location separately.  Generally "'a single warrant may authorize the search of several different places or residences' as long as probable cause is shown for searching

-7-

each place." <u>United States v. Langston</u>, 970 F.2d 692, 703 (10th Cir. 1992) (citing <u>United States v. Rios</u>, 611 F.2d 1335, 1347 (10th Cir. 1979)).

In addition to these general standards regarding probable cause, the search warrant must also describe with particularity the place to be searched and the things to be seized. U.S. Const. amend. IV. The particularity requirement ensures that the search is as limited as possible, and was intended to prevent the wide-ranging, "exploratory rummaging" of a "general search," which the colonists abhorred. <u>United States v. Foster</u>, 100 F.3d 846, 849 n.3 (10th Cir. 1996) (quoting <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971)).

Government agents may only seize items that are described in the warrant, and "nothing is left to the discretion of the officer executing the warrant." <u>Id.</u> at 849.

> '[A] warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized.' <u>United States v. Finnigin</u>, 113 F.3d 1182, 1187 (10th Cir. 1997) (omitting quotations and citations). Further, the warrant must leave nothing to the officer's discretion as to what is to be seized, so that the officer is prevented from generally rummaging through a person's belongings. <u>See Lawmaster v. Ward</u>, 125 F.3d 1341, 1347-48 (10th Cir. 1997).

<u>United States v. Hargus</u>, 128 F.3d 1358, 1362 (10th Cir. 1997). The scope of a warrant is sufficiently limited to satisfy constitutional concerns when it:

> "allow[s] the executing officers to distinguish between items that may and may not be seized." <u>Finnigin</u>, 113 F.3d at 1187 (quoting <u>United States v. Leary</u>, 846 F.2d 592, 602 (10th Cir. 1988)). "Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the

-8-

> circumstances and the nature of the activity
> under investigation permit." <u>Davis [v. Gracey]</u>,
> 111 F.3d [1472,] 1478 [10th Cir. 1997] (internal
> quotations omitted).

<u>Id.</u> at 1362-63.  In evaluating a search warrant for compliance with the particularity requirement, a court considers the warrant as a whole, rather than reading particular parts in isolation.  <u>See</u> <u>Andresen v. Maryland</u>, 427 U.S. 463, 480-81 (1976); <u>United States v.</u> <u>Artez</u>, 389 F.3d 1106, 1115 n.5 (10th Cir. 2004); <u>United States v.</u> <u>Robertson</u>, 21 F.3d 1030, 1033-34 (10th Cir. 1994).

Defendant argues that probable cause was lacking to support the search warrant because: 1) the Goodwyn Affidavit lacked particularity as to any criminal activity tied to defendant and his house (i.e., defendant argues that it was a general search and not a search for specific items related to a specific crime); 2) the "prior activities of the defendant, occurring months, and even years, before the date of the application, when he resided at other addresses, were not timely related to the purpose of the search warrant"; 3) the statement by CW #3 that defendant shot and killed David Barney is "totally unsubstantiated" and unreliable; and 4) the Goodwyn Affidavit omitted information and was misleading.

Although the motion presents a close question, the court finds that the facts set forth in the affidavit establish probable cause to search defendant's residence.  Evidence of defendant's prior gang association, his current gang association, the fact that defendant's street gang was involved in the sale of narcotics and that records of these sales are often kept in the home, along with defendant's criminal history and CW #3's allegation of defendant's participation

in the murder of David Barney, are sufficient to warrant a person of reasonable caution in believing that the items sought would be found in defendant's home. <u>See</u> <u>United States v. Mathis</u>, 357 F.3d 1200, 1205 (10th Cir. 2004) (noting that an officer's opinion, based on his professional expertise, that evidence of illegal activity will be found in the place to be searched is entitled to consideration in determining whether probable cause existed at the time a warrant is issued).

In addition, the affidavit showed the magistrate judge that defendant's previous arrests were of the same general nature as the evidence the warrant sought to discover, and thus were valuable in establishing probable cause to search his residence. <u>See</u> <u>United States v. Broyles</u>, No. 02-40013-01-SAC, 2002 WL 1808751, at *6 (D. Kan. July 19, 2002) (noting that prior arrests and convictions can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover). Defendant was previously convicted of possession of drug paraphernalia, arson and criminal possession of a firearm, and the affidavit sought evidence related to these types of activities. This information, coupled with the facts regarding defendant's gang association, adds reason to believe that items related to criminal activity would be found in defendant's residence.

Regarding particularity, the Goodwyn Affidavit clearly set forth the specific items it sought for the specific crimes alleged. <u>See</u> <u>Hargus</u>, 128 F.3d at 1362. The search warrant authorized the search and seizure of the following items: firearms, firearm accessories, and

-10-

ammunition; telephones, address books, telephone records, communication devices, data and lists reflecting names, and addresses and telephone numbers of suspected co-conspirators; photographs, videotapes, correspondence, and other documents establishing relationships between members and/or associates of the Crips; indicia of occupancy, residency, rental, control and ownership of the targeted premises; documentation relating to living and recreational expenses; and gang paraphernalia. The Goodwyn Affidavit alleged criminal activities relating to the drug trade, RICO, and gun crimes, among other things. The search warrant is therefore sufficiently particular.

Regarding staleness, the court also finds that probable cause is supported by timely information. Defendant argues that after his release from prison on January 3, 2007, there was no police observation related to defendant or defendant's residence. "Whether information is stale depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." United States v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005). The Goodwyn Affidavit alleges ongoing gang association, and establishes defendant's participation in street gang activity over a period of years. The search warrant sought, among other things, the type of information (i.e., records of transactions, gang paraphernalia) that are maintained in a residence over a lengthy period. See United States v. Cantu, 405 F.3d 1173, 1178 (10th Cir. 2005) (stating that when "the circumstances suggest ongoing criminal activity, the passage of time recedes in importance"). The Goodwyn Affidavit also, however, alleges defendant's involvement in the recent

-11-

murder of David Barney in July 2006, which ties defendant to recent criminal activity.   See id. (stating that "information may be refreshed by more recent events").

Regarding the affidavit's use of a confidential informant, defendant challenges CW #3's reliability.  Defendant alleges that the Goodwyn Affidavit fails to recite that CW #3 is known historically to be a reliable informant, citing Aguilar v. Texas, 378 U.S. 108 (1964) for the proposition that an affidavit must satisfy a magistrate that the informant is reliable.  (Doc. 22 at 13-14.)  Contrary to defendant's assertion, however, the Goodwyn Affidavit does set forth CW #3's reliability when it states that CW #3 has been supplying information since November 2006, is a documented member of the Neighborhood Crips street gang, has participated in some of the gang's criminal activities, that much of the information provided by CW #3 was verified through independent investigation, such as police reports, recorded conversations, letters, interviews, telephone records, surveillance, undercover narcotics purchases, and evidence recovered in the execution of search warrants.  The issuing magistrate judge was reasonable in finding that CW #3 was reliable.[7]

Finally, defendant argues that the information provided to the magistrate judge concerning defendant was "erroneous and misleading."

---

[7]  In addition, the old Aguilar test has been replaced in favor of a "totality of the circumstances" test, per Illinois v. Gates, 462 U.S. 213, 238 (1983).  "To be sure, an informant's veracity, reliability and basis of knowledge all remain highly relevant in determining the value of his or her report.  However, the Supreme Court has concluded that these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case."  United States v. Archuleta, 222 Fed. Appx. 710, 717-18 (10th Cir. 2007) (citing and quoting Gates throughout).

Defendant asserts the affidavit is misleading and provides misinformation in the following respects:

- Defendant was born December 23, 1981. On July 31, 1997, when the police executed the search warrant at 1320 N. Indiana at the residence of Curtis Profit and found defendant present, defendant was fifteen years old.

- Defendant was sentenced to thirty-six months imprisonment as a result of his guilty plea to the October 2001 charges of arson and criminal possession of a firearm. Defendant was placed on probation but his probation was revoked and his original sentence was imposed. Defendant was in prison from November 10, 2004 to September 2, 2005, when he was paroled. His parole was revoked and he was sent back to prison from September 15, 2006 to January 3, 2007. Defendant argues that the affidavit should have provided the magistrate judge with information concerning defendant's fifty-seven months of incarceration during major portions of 2005 and 2006.

- Defendant had only resided in the residence at 2331 N. Green for a short period of time. Until a few weeks before the execution of the search warrant, he and his wife had resided at other addresses.

(Doc. 20 at 7.)[8] Defendant asserts that these omissions amount to an attempt to recklessly mislead the court.

In order to invalidate a warrant on this basis, defendant must show that the omitted facts were material. United States v. Kennedy, 131 F.3d 1371, 1377 (10th Cir. 1997). "If the magistrate judge would not have altered his probable cause determination even if he had been presented with the omitted material, then the warrant should be

---

[8] Defendant also initially argued that the affidavit contained a misstatement that he was convicted of possession of paraphernalia in October 2000. Defendant argued that he was released and no further action was taken after his arrest resulting from the October 4, 2000 allegation of possession of paraphernalia, rather than being convicted, as the affidavit states. Defendant's counsel made this argument in reliance on a report of criminal history from the probation office. At oral argument, the government offered a certified copy of defendant's municipal court conviction. This point is therefore no longer at issue.

-13-

upheld." <u>Id.</u> The test that this court must consider is, if the magistrate judge had been aware of the omitted information, would he still have found probable cause to issue the search warrant. <u>See United States v. Avery</u>, 295 F.3d 1158, 1168 (10th Cir. 2002).

The court finds that the omitted information would not have altered the finding of probable cause that supported the search warrant. The omitted information shows only that defendant's earliest alleged association with a street gang may have been as a victim, rather than as a participant. This fact does not alter defendant's later associations with members of the Crip street gang. Further, the fact that defendant was incarcerated for a period of time the Goodwyn Affidavit covers would have been obvious to the issuing magistrate judge as the Goodwyn Affidavit alerted the magistrate judge of defendant's guilty plea to arson and criminal possession of a firearm. The convictions surely are obvious in their implication for imprisonment. Finally, the fact that defendant had lived in his residence for a "short period of time" does not change the fact that the evidence for which the search warrant was issued is likely to be kept in the home, wherever that home may be.

The Supreme Court has observed that "a magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" <u>Gates</u>, 462 U.S. at 236 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)). In doing so, reviewing courts must apply the totality of the circumstances test:

> The task of the issuing magistrate judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information,

-14-

> there is a fair probability that contraband or
> evidence of a crime will be found in a particular
> place. And the duty of a reviewing court is simply to
> ensure that the magistrate had a substantial basis
> for. . . conclud[ing] that probable cause existed.

Gates, 462 U.S. at 238-39 (internal citation omitted). The court

finds that the affidavit, considered as a whole, provided a reasonable

basis for the magistrate judge to determine with "fair probability"

that evidence of a crime would be found at defendant's residence.

2. Good Faith Exception

Even if the affidavit were legally insufficient, however, the

court would uphold the search because the officers executing the

search warrant acted with an objective good-faith belief that the

warrant was properly issued by a neutral magistrate. See United

States v. Leon, 468 U.S. 897 (1984).

The Supreme Court recognizes four situations in which an officer

would not have reasonable grounds for believing a warrant was properly

issued. In these situations, the good-faith exception to the

exclusionary rule would not apply.

> First, evidence should be suppressed if the
> issuing magistrate was misled by an affidavit
> containing false information or information that
> the affiant would have known was false if not for
> his "reckless disregard of the truth." Second,
> the exception does not apply when the "issuing
> magistrate wholly abandon[s her] judicial role."
> Third, the good-faith exception does not apply
> when the affidavit in support of the warrant is
> "so lacking in indicia of probable cause as to
> render official belief in its existence entirely
> unreasonable." Fourth, the exception does not
> apply when a warrant is so facially deficient
> that the executing officer could not reasonably
> believe it was valid.

United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000)

(citing throughout United States v. Leon, 468 U.S. 897 (1984)).

-15-

Defendant argues that reliance on the affidavit by officers in executing the search warrant was unreasonable, in violation of <u>Leon</u>. When reviewing the reasonableness of an officer's reliance upon a search warrant, a court "must examine the underlying documents to determine whether they are 'devoid of factual support.'" <u>United States v. Danhauer</u>, 229 F.3d 1002, 1006 (10th Cir. 2000) (quoting <u>United States v. McKneely</u>, 6 F.3d 1447, 1454 (10th Cir. 1993)).

The Goodwyn Affidavit supporting the search warrant was not so lacking in indicia of probable cause that the executing officer should have known that the search may have been illegal despite the magistrate's authorization.  The executing officer could reasonably have believed that the evidence of defendant's gang association, defendant's criminal history, and the fruits of investigation into CW #3's allegations, along with officers' knowledge concerning the types of evidence generally maintained in the home by members of gangs, sufficiently linked criminal activity with defendant's residence.  The affidavit here is not so lacking in indicia of probable cause that the executing officers should have known the search was illegal despite the issuing judge's authorization.  <u>See</u> <u>Leon</u>, 468 U.S. at 922 n.23.

Because the court finds that evidence need not be suppressed as a result of the officers' reliance on the search warrant, the remainder of the evidence resulting from execution of that warrant is not subject to the exclusionary rule pursuant to <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).  Defendant's motion to suppress is denied.

**B.  Motion to Dismiss the Indictment**

Defendant moves for dismissal of the indictment against him,

based on his assertion that the statute under which he is charged exceeds Congress's power under the Commerce Clause. (Doc. 23.) Defendant's argument derives from United States v. Patton, 451 F.3d 615 (10th Cir. 2006), cert. denied by ___ U.S. ___, 127 S. Ct. 1247 (2007). In Patton, the Tenth Circuit held that the federal statute barring possession of body armor by a felon, 18 U.S.C. § 931, was constitutional, despite noting "considerable tension between Scarborough[ v. United States, 431 U.S. 563 (1977)] and the three-category approach adopted by the Supreme Court in its recent Commerce Clause cases." Patton, 451 F.3d at 636. Despite this tension, the Patton court upheld the statute's constitutionality based on the controlling precedent of Scarborough v. United States, 431 U.S. 563, 575 (1977), which implicitly held that Congress may regulate any firearm that has ever moved in interstate commerce. Id. at 634-36.

The Tenth Circuit has consistently upheld § 922(g)(1) against Commerce Clause challenges. See, e.g., United States v. Jones, 390 F.3d 1291, 1292 (10th Cir. 2004) (rejecting "argument that § 922(g)(1) is beyond Congress's power under the Commerce Clause"), vacated on other grounds and remanded by, 544 U.S. 971 (2005), reinstated by, 425 F.3d 1274 (10th Cir. 2005); United States v. Brown, 314 F.3d 1216, 1220-21 (10th Cir. 2003) (same); United States v. Dorris, 236 F.3d 582, 584-86 (10th Cir. 2000) (same); United States v. Farnsworth, 92 F.3d 1001, 1006-07 (10th Cir. 1996) (same); United States v. Bolton, 68 F.3d 396, 400 (10th Cir. 1995) (same).

In addition, a Tenth Circuit case decided subsequent to Patton has upheld the constitutionality of § 922(g)(1). See United States v. Stokes, 222 Fed. Appx. 799, 800 (10th Cir. 2007) (refusing to

-17-

consider a Commerce Clause challenge to § 922(g)(1) because of controlling precedent); <u>see also</u> <u>United States v. Vasquez-Vargara</u>, No. 07-10014-JTM, 2007 WL 1372628, at *1 (D. Kan. May 9, 2007) (same). In reliance upon this controlling precedent, defendant's motion to dismiss the indictment is denied.

## III.   CONCLUSION

Defendant's motion to suppress (Doc. 20) and motion to dismiss (Doc. 23) are DENIED for the reasons stated more fully herein.  The clerk is directed to set this case for trial.

IT IS SO ORDERED.

Dated this   25th   day of July, 2007, at Wichita, Kansas.

S/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE